[662 NYS2d 511]

In the Matter of PHILIP I. AARON, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, September 8, 1997

## APPEARANCES OF COUNSEL

*Frank A. Finnerty, Jr.,* Syosset *(Chris G. McDonough* of counsel), for petitioner.

*Roy D. Simon, Jr.,* New York City *(Sarah Diane McShea* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The petition contains 10 charges of professional misconduct

against the respondent. The charges allege, in substance, that the respondent exaggerated his fees and expenses in connection with several mortgage foreclosure actions. After the hearing, the Special Referee sustained Charges One, Two, Three and Five insofar as they alleged that the respondent submitted a false and fraudulent proof of claim and affirmation to the United States Bankruptcy Court for the Eastern District of New York. However, the Special Referee failed to sustain Charges One, Two, Three and Five insofar as they alleged that the respondent's affidavit dated February 4, 1992 was false and fraudulent. The Special Referee also sustained Charges Six, Eight and Ten. He did not sustain Charges Four, Seven and Nine. The Grievance Committee moves to confirm so much of the report as sustained portions of Charges One, Two, Three and Five, and Charges Four, Eight and Ten, and to disaffirm so much of the report as failed to sustain portions of Charges One, Two, Three and Five, and Charges Seven and Nine of the petition, and the respondent cross-moves to confirm the report as to Charges Four, Seven and Nine, and as to those portions of Charges One, Two, Three and Five which the Special Referee did not sustain, and to disaffirm the report of the Special Referee as to Charges Six, Eight and Ten, and those portions of Charges One, Two, Three and Five which were sustained.

Charges One, Two, Three and Five are based on the following factual allegations:

The respondent represented Banc Plus Mortgage Corporation (hereinafter Banc Plus), which held a first mortgage on the residence of Ina Campbell, located in Roosevelt, New York. In 1991 Ms. Campbell filed a chapter 13 petition in bankruptcy in the United States Bankruptcy Court for the Eastern District of New York. The respondent filed a proof of claim with that court on July 11, 1991, which was signed by him on behalf of Banc Plus. The proof of claim requested, *inter alia,* $4,060 in mortgage arrears owed to Banc Plus, and $3,278.75 in legal fees and expenses, the payment of which was to the direct monetary advantage, gain, and benefit of the respondent.

Ms. Campbell, by her attorney, moved to determine the reasonableness of the respondent's legal fees and expenses. The respondent submitted an affirmation dated December 4, 1991 which he signed personally on behalf of his law firm. In reply, Ms. Campbell's attorney questioned whether the respondent had actually incurred some of the costs included in his December 4, 1991 affirmation. The respondent then submitted

an affidavit dated February 4, 1992, to explain the apparent discrepancies.

On February 7, 1992, a hearing on the motion was held before Judge Hall. The respondent did not appear, but a senior associate from his law firm appeared to argue the matter. No one from the respondent's law firm testified at the hearing. Afterwards, Judge Hall issued a memorandum and order in which he discussed the respondent's claim for legal fees and expenses. With regard to the respondent's expenses, he found, in effect, as follows:

1. CERTIFICATION OF NECESSARY PARTIES (FORECLOSURE REPORT) $500

The respondent produced a bill for $450, resulting in an obvious overcharge of $50.

2. SERVICE OF PROCESS $260.75

The respondent produced the following bills from the process server:

| | | |
|---|---|---|
| Debtor Ina Campbell | $ 25 | (3/22/91) |
| Delta Funding Corp. | $ 15 | (3/22/91) |
| Willy Davis | $ 16 | (4/13/91) |
| Bank of Commerce | $ 20 | |
| | $ 76 | |
| Investigation to locate | | |
| Willy Davis | $200 | |
| | $276 | |

No explanation was given to verify the need or the reasonableness of the $200 investigative fee. No proof of payment was submitted.

3. FORECLOSURE FILING FEE $198

The respondent produced a cancelled check dated March 14, 1990 to the title company.

4. FILING FEE FOR REQUEST FOR JUDICIAL INTERVENTION $75

The respondent admitted that this was not an expense incurred as alleged in his affirmation of December 4, 1991. The respondent described it as a prospective fee to be paid in the future. Although it had not been paid, and may never be paid, the respondent asked that he be paid 12% interest a year on $75 for the 36-month life of the plan.

Because the proof of claim did not disclose that the $75 charge would be the filing fee *if* the debtor asked the respondent to cancel the notice of pendency at the completion of the plan, there was no assurance that the respondent would not bill the debtor again for the same filing fee in three years.

5. CANCELLATION OF NOTICE OF PENDENCY $350

The respondent admitted that this was not an expense incurred, but a prospective legal fee for work that may be done in the future. The respondent asked that he be paid 12% interest a year for three years on the $350 that he had not earned.

Since the proof of claim did not inform the debtor or her attorney that she was being charged the $350 in order to cancel the notice of pendency, there was no assurance that the respondent would not bill the debtor again if he was requested to cancel the notice of pendency in three years when the plan was completed.

6. ADDITIONAL FEES INCLUDING MAILING & MICROFILMING $170

The respondent alleged that this was what he charged his clients. There was no evidence that any of these expenses were incurred or any reason for the debtor to pay this sum.

7. COURT AND CALENDARING SERVICE $75

The respondent conceded that his affirmation that the $75 fee was an expense incurred for court and calendaring services was untrue.

8. REFEREE'S FEE TO COMPUTE $50

The respondent conceded that his affirmation that the $50 fee was paid to a Referee to compute was untrue.

Judge Hall found that the claim filed by the respondent contained a mathematical error that increased the claim for legal fees by $2,123.55. The respondent did not bring this error to the court's attention, although the motion was pending from October 11, 1991.

With regard to the legal services rendered, Judge Hall found that the respondent's affirmation of December 4, 1991 did not show the dates on which the alleged legal services were performed. However, a careful reading of the affirmation revealed that the debtor was charged $67.50 for the preparation and review of an affidavit in support of the Referee's fee to compute. Service of the last defendant was on April 13, 1991, and the bankruptcy petition was filed on April 26, 1991. At that stage of the foreclosure action, before the filing of the bankruptcy petition, there would have been no reason to prepare such an affidavit. Thus, Judge Hall found that this charge for legal services was baseless and fraudulent.

Judge Hall also found that the debtor was charged for an attorney to prepare and send a cover letter filing three affidavits of service with the County Clerk four months after the petition was filed and two months after the claim was filed with the

court. The record of the County Clerk shows a letter from the creditor dated September 17, 1991, enclosing an affidavit of service for four defendants: Ina Campbell, Willy Davis, Delta Funding Corp., and Bank of Commerce. The affidavit of service for Willy Davis was previously filed with the County Clerk on April 24, 1991, and was not included with the letter. Attached to the affidavits was a copy of the summons dated September 17, 1991. However, the actual summons was dated March 13, 1991. Therefore, Judge Hall found that the debtor was charged legal fees to have an attorney prepare a simple cover letter that was incorrect, prepared after the claim was filed, and in violation of the automatic stay in bankruptcy.

The respondent told the court that the claim, which was filed on July 15, 1991, included three and one-half hours of legal work for a motion in the Bankruptcy Court that was made after the claim was filed. Judge Hall found that this may have been done in order to hide the mathematical error of $2,123.55 in favor of the respondent.

Judge Hall also found that the claim for expenses never incurred and for legal work not performed supported the conclusion that the claim for legal services and expenses was, for the most part, fraudulent.

Judge Hall addressed the argument put forth at the hearing by the respondent's senior associate that it was another associate who prepared the figures presented to the court and that the respondent probably was not independently aware of their accuracy. He found that there was no evidence to support this argument because the respondent signed the proof of claim and swore under the penalty of perjury in an affidavit and in an affirmation to the accuracy of the figures. Thus, Judge Hall found that there was no evidence that anyone else was responsible for or involved in the preparation of those documents.

Judge Hall found that the respondent's proof of claim, as well as his December 4, 1991 affirmation, were grossly and outrageously fraudulent. He also found that, by filing a false affidavit and proof of claim, the respondent stood to receive an additional $5,402.30, plus interest, from the debtor. He further found that, if the respondent's claim had not been challenged, the debtor might have lost her house, and the respondent's client, Banc Plus, would have lost the opportunity to reinstate the mortgage.

Charge One alleged that the respondent perpetrated a fraud on the Bankruptcy Court by filing and submitting false, fraud-

ulent, and misleading documents, affidavits, and affirmations which he, as an attorney and officer of the court, affirmed or swore to be true when, in fact, he knew or should have known of their falsity. By submitting a fraudulent affidavit, affirmation, and proof of claim to the Bankruptcy Court, the respondent engaged in conduct involving fraud, dishonesty, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (A) (4) (22 NYCRR 1200.3 [a] [4]).

Charge Two alleged that by submitting a fraudulent affidavit, affirmation, and proof of claim to the Bankruptcy Court, the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (A) (5) (22 NYCRR 1200.3 [a] [5]).

Charge Three alleged that by submitting a fraudulent affidavit, affirmation, and proof of claim to the Bankruptcy Court, the respondent knowingly made a false statement of fact, in violation of Code of Professional Responsibility DR 7-102 (A) (5) (22 NYCRR 1200.33 [a] [5]).

Charge Five alleged that the respondent falsely swore or affirmed that the documents submitted to the Bankruptcy Court were true, in violation of Code of Professional Responsibility DR 1-102 (A) (former [7]) (now [8]) (22 NYCRR 1200.3 [a] [8]).

The figures contained in the proof of claim and the affirmation were submitted to the Bankruptcy Court by the respondent. The figures contained therein were, in fact, found to be fraudulent by the court. Regardless of who actually prepared those documents, the respondent swore or affirmed that they were true, and he is responsible for their contents.

Charge Six alleged that, by abusing his superior contractual position as the attorney for various creditors, the respondent engaged in conduct that adversely reflects on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (A) (former [7]) (now [8]) (22 NYCRR 1200.3 [a] [8]).

The respondent represented various lenders who retained him to bring foreclosure actions against homeowners who were in arrears in their mortgage obligations. Six of those homeowners (Sheridan, Jackson, McComb, Miller, Skiades, and Panus) complained to the Grievance Committee, stating, *inter alia,* that the legal fees charged by the respondent were excessive. The mortgage instruments provided that the homeowners were responsible for payment of the lenders' legal fees and expenses. The respondent inflated his legal fees and expenses by charging for work not actually performed, and by charging for

excessive documents that were created immediately upon receipt of the files, regardless of the reasonableness of doing so. Moreover, after reinstatement of the mortgages pursuant to settlements, the respondent charged for motions to discontinue the foreclosure actions, instead of using stipulations, in order to further increase his fees.

Charge Ten alleged that, by billing and collecting fees for expenses that were never actually incurred or to which the respondent clearly was not entitled, the respondent charged Mr. Panus an excessive fee, in violation of Code of Professional Responsibility DR 2-106 (A) and DR 1-102 (A) (4) (22 NYCRR 1200.11 [a]; 1200.3 [a] [4]).

The respondent billed Edward and Maryann Panus $200 for a guardian ad litem fee. However, that expense was never incurred since the application for the appointment of a guardian ad litem was withdrawn prior to the preparation of the respondent's bill.

Based on the evidence adduced at the hearing, the motion and the cross motion to confirm in part and disaffirm in part the report of the Special Referee are determined as follows: Charges One, Two and Three are sustained in their entirety. Charge Four is not sustained. Charge Five is sustained only insofar as it alleges that the respondent violated Code of Professional Responsibility DR 1-102 (A) (former [7]) (now [8]) (22 NYCRR 1200.3 [a] [8]) by submitting a false affidavit and a false affirmation to the Bankruptcy Court. Charge Six is sustained with regard to the Sheridan, Jackson, McComb, Miller, Skiades and Panus matters. Charges Seven, Eight and Nine are not sustained, and Charge Ten is sustained only insofar as it alleges that the Panuses were billed $200 for a guardian ad litem who was never appointed.

In determining the appropriate measure of discipline to impose, we have considered the alleged mitigation proffered by the respondent.

The respondent has an extensive disciplinary history which includes two letters of admonition and three letters of caution, all of which were issued between 1991 and 1993.

In view of the serious professional misconduct outlined in the current charges and the respondent's extensive disciplinary history, the respondent is disbarred from the practice of law, effective immediately.

MANGANO, P. J., ROSENBLATT, MILLER, O'BRIEN and RITTER, JJ., concur.

Ordered that the petitioner's motion and the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee are granted to the extent that Charges One, Two and Three are sustained in their entirety; Charge Four is not sustained; Charge Five is sustained only insofar as it alleges that the respondent violated Code of Professional Responsibility DR 1-102 (A) (former [7]) (now [8]) (22 NYCRR 1200.3 [a] [8]) by submitting a false affidavit and a false affirmation to the Bankruptcy Court; Charge Six is sustained with regard to the Sheridan, Jackson, McComb, Miller, Skiades and Panus matters; Charges Seven, Eight and Nine are not sustained; and Charge Ten is sustained only insofar as it alleges that the Panuses were billed $200 for a guardian ad litem who was never appointed; the motion and cross motion are otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent Philip I. Aaron is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that Philip I. Aaron shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Philip I. Aaron is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.