**Dennis UY, M.D., Plaintiff,**

**Noah A. Kinigstein, Appellant,**

**v.**

**The BRONX MUNICIPAL HOSPITAL CENTER, Albert Einstein College of Medicine, New York City Health & Hospital Corporation, City of New York, and B. Robert Meyer, M.D., Defendants,**

Vladeck, Waldman, Elias and Engelhard, PC, Appellee.

No. 98–7921.

United States Court of Appeals, Second Circuit.

Submitted May 4, 1999.

Decided June 30, 1999.

Noah A. Kinigstein, pro se, New York, N.Y., for Appellant.

Herbert Eisenberg, Davis & Eisenberg, New York, N.Y. (Paula A. Brantner, National Employment Lawyers Association, San Francisco, CA), for Amicus Curiae, National Employment Lawyers Association.

Before: WINTER, FEINBERG and LEVAL, Circuit Judges.

PER CURIAM:

Appellant Noah Kinigstein, Esq., an attorney, appeals from a judgment of the United States District Court for the Southern District of New York (Constance Baker Motley, *J.*) ordering him to return approximately $29,000 in fees paid to him by a former client under a private fee arrangement. *See Uy v. Bronx Mun. Hosp. Ctr.,* 8 F.Supp.2d 321 (S.D.N.Y.1998). Appellant had petitioned the court for attorneys' fees pursuant to 42 U.S.C. § 1988 after the client, represented by new counsel, secured a $35,000 settlement in his employment discrimination action. Rather than award fees against defendants under § 1988, the district court, purporting to act under a state disciplinary rule that bars attorneys from charging "excessive" fees, ordered appellant to refund the portion of

the private retainer already paid by plaintiff that the court concluded exceeded a reasonable attorney's fee under the lodestar approach. We reverse.

## BACKGROUND

The plaintiff, Dr. Dennis M. Uy, a native Filipino, was discharged from his employment as a resident at Bronx Municipal Hospital in January 1995, following a hospital committee's investigation of charges against him. Dr. Uy filed suit against the hospital and others involved in the decision to discharge him, contending, *inter alia,* that he was discriminatorily discharged on the basis of his race and national origin in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq;* 42 U.S.C. § 1983; and the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq.* The case was assigned by the district court to Judge Motley.

Dr. Uy's first attorney in the suit was disbarred. He dismissed his second attorney. On May 10, 1996, Dr. Uy retained appellant Noah Kinigstein, a solo practitioner, as his third attorney, and Kinigstein represented plaintiff in preparation for trial until June 10, 1997.

Dr. Uy paid fees to each of his three successive attorneys under privately made arrangements. Between May 7, 1996, and May 12, 1997, he paid appellant Kinigstein a total of $43,142.50 in fees including $3,000 in fees for unrelated immigration work.

Judge Motley conducted a pretrial conference on June 10, 1997, the day set for the start of trial. After hearing argument on various pretrial motions for approximately six hours, the judge announced that she had decided to remove appellant from the case and to appoint a larger law firm to represent plaintiff. Judge Motley expressed doubts whether a solo practitioner would be able to devote enough time to "a case which requires a great deal of work." After inquiring as to plaintiff's income, the court determined plaintiff was qualified to receive counsel under the federal *in forma pauperis* statute, 28 U.S.C. § 1915(e)(1). The court stated that new counsel could be paid under the fee-shifting statute if plaintiff prevailed, and that appellant would "have a lien."

Kinigstein took exception to the court's view that a solo practitioner could not adequately handle the matter, and stated that he had given plaintiff's case "a tremendous amount of attention" in the past year. The next day appellant wrote to the district judge, expressing dismay at her decision to relieve him as counsel for plaintiff but stating that he would abide by what the court concluded was best for the client. Judge Motley requested the law firm of Vladeck, Waldman, Elias, and Engelhard to represent plaintiff, and it agreed to do so.

In November 1997, plaintiff, represented by the Vladeck firm, settled with the defendants for $35,000. The settlement agreement expressly released defendants from "all claims for attorneys' fees, costs, disbursements or the like."

After Kinigstein learned of the settlement, he moved in the district court for an award of attorneys' fees against the defendants pursuant to 42 U.S.C. § 1988. His affidavit submitted in support of his fee application requested compensation for approximately 263 hours of work, at an hourly rate of $300.00, for a total fee award of $82,232.00, inclusive of costs. The defendants opposed any award of fees on the ground that, as a part of the settlement, plaintiff expressly released the defendants from liability for attorneys' fees. Kinigstein informed the court that, pursuant to his fee agreement with Dr. Uy, he had been paid $43,142.50, representing fees and costs. The court held a hearing on the fee application on January 6, 1997, at which Judge Motley questioned appellant in detail about his work on plaintiff's case.

On June 5, 1998, the district court issued a written opinion. The court denied Kinigstein's fee application, and proceeded without any request by plaintiff to consider

whether the approximately $43,000 plaintiff had paid to Kinigstein was excessive under Disciplinary Rule 2–106 of the New York State Code of Professional Responsibility, which provides that "[a] lawyer shall not . . . collect an illegal or excessive fee." 22 N.Y.C.R.R. § 1200.11(a). Following the lodestar approach of *Hensley v. Eckerhart*, 461 U.S. 424, 433–34, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), Judge Motley found that the plaintiff's case was "very weak," that Kinigstein's time should, therefore, have been directed to settlement rather than trial preparation, and that the hourly fee Kinigstein sought was unreasonably high. *Uy*, 8 F.Supp.2d at 324–26. The court found that $14,200 was the appropriate lodestar valuation of appellant's work for plaintiff. Because Kinigstein received $43,142.50 from plaintiff, the court ordered Kinigstein to refund the difference of $28,942.50 to plaintiff.

## DISCUSSION

The district court's order requiring appellant to refund $28,942.50 to plaintiff was based, in part, on the court's conclusion that approximately two-thirds of appellant's time invested in plaintiff's case was improper. Plaintiff claimed entitlement to payment for 263.2 hours of work. The court ruled that only 90 hours were allowable. We believe the court's order cannot be sustained for a number of reasons.

█ Under New York law, a private retainer agreement is viewed as presumptively fair "in the absence of fraud, deceit, overreaching, or undue influence." *Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F.Supp. 527, 531 (S.D.N.Y. 1984) (internal quotation marks and citations omitted). The district court made no finding of fraud, deceit, overreaching, or undue influence. Indeed, the court did not question whether appellant had in fact worked the hours claimed. The court's reasons for disallowing two-thirds of appellant's hours of work were the following:

(1) Plaintiff's case was weak. Kinigstein "should have known that there was little chance of winning the case," and should have settled. "[N]o reasonable lawyer would have spent so much time preparing for trial instead of [engaging in] settlement negotiations."

(2) The court also faulted Kinigstein (and found he had violated Rule 11 of the Federal Rules of Civil Procedure) for failing to ascertain before he entered upon the representation that there was no corroboration for Dr. Uy's statement that he was told by his supervisor that he "could be terminated at any time because he was a foreigner."

We find the reasons on which the district court relied did not justify the order in these circumstances.

█ First, as to the disallowance of the vast majority of time spent in trial preparation on the ground that Kinigstein should have sought settlement rather than preparing for trial, Kinigstein established without contradiction that he made substantial efforts to settle but that defendants "refused to discuss a monetary settlement. The attorney for the defendants told me they would not settle for any money." Kinigstein reported that when he had attended a mediation session with the defendants, the defendants' attorney requested a fifteen-minute adjournment, absented herself for two and a half hours, and on returning announced she would not participate in the settlement discussions any longer.

█ We recognize that a trial judge generally enjoys broad discretion in assessing reasonableness on issues relating to attorneys' fees. But in this instance, the court's reasoning cannot be sustained. An attorney cannot reach settlement with an adversary who refuses to discuss settlement. In the face of the defendants' refusal to discuss any monetary payment whatsoever, it was not proper to hold the attorney had no business preparing for trial. Preparation for trial was the only

means by which he could discharge his duty to represent his client.

■ Nor can we sustain the district court's assertion that the attorney violated the standards of Rule 11 by failing to ascertain, before accepting the representation, that the defendants' witnesses would not corroborate the plaintiff's assertion that he had been told that he could be fired because he was a foreigner. The court's reasoning on this point was flawed in several respects.

First, the district court seemed to believe that the case was legally insufficient without corroboration of the plaintiff's testimony. ( "[S]uch a statement requires evidentiary support in addition to the client's mere assertion." *Uy*, 8 F.Supp.2d at 324). That is a mistaken proposition. A plaintiff's testimony quoting his supervisor's statements evidencing an illegal discriminatory animus is legally sufficient to create a jury question of the existence of such animus. Rule 11 requires an attorney to determine that "the allegations and other factual contentions *have evidentiary support* or . . . are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed.R.Civ.P. 11(b)(3) (emphasis added). Dr. Uy's allegations did have "evidentiary support," consisting of at least his own testimony as to what hospital representatives said to him. Rule 11 was therefore satisfied. The rule does not require the attorney to ascertain that the plaintiff's contentions will be conceded by the defendants' witnesses.[1]

Furthermore, the court's view that, before accepting the representation, Kinigstein should have ascertained that the defendant's witnesses would not corroborate the plaintiff would impose an unreasonable burden on counsel. Kinigstein had no way of ascertaining before he entered into the representation whether the defendants' witnesses would corroborate or contradict the plaintiff's assertion. The defendant's employees are unlikely to make themselves available to be interviewed by an attorney who is contemplating representing the plaintiff. As a practical matter, in the usual case, the only way the attorney can discover what adverse witnesses will say is by taking their deposition, and that cannot be done until the attorney assumes the representation.

Thus, while we are not sure how the court's finding of a violation of Rule 11 related to the order under Disciplinary Rule 2–106 requiring return of the fees paid by plaintiff, the finding of a violation of Rule 11 cannot be sustained.

The court's order also required Kinigstein to return fees that plaintiff had paid in connection with a different matter. Kinigstein's submission made clear, and the district court acknowledged, that $3,000 of the $43,142.50 plaintiff had paid to Kinigstein was for immigration work. Nonetheless, the order requiring the reimbursement of $28,942.50 was based on the conclusion that Kinigstein had earned only $14,200 *in this case* and should therefore refund the entire amount received from plaintiff that exceeded $14,200. The amount ordered to be returned included the $3,000 earned independently of the case before the district court.

■ Finally, the order of sanctions was based on a mistaken perception of the governing standards of the disciplinary rule. In deciding how much the attorney had earned, the court followed the procedure used to determine fee awards under 42 U.S.C. § 1988 and observed that "the amount of attorney's fees awarded is 'largely within the discretion of the district court.'" *Uy*, 8 F.Supp.2d at 325 (quoting *Cohen v. West Haven Bd. Of Police*

---

1. We need not consider the further fact that, while Rule 11(b) deals with the certification an attorney is deemed to make to the court *by filing a pleading*, the present complaint had been filed by a previous attorney. Rule 11 does not, at least on its face, provide that an appearance in a previously filed case constitutes the attorney's certification to the evidentiary support for the contentions made in papers filed prior to the attorney's appearance.

*Comm'rs*, 638 F.2d 496, 505 (2d Cir.1980)). The court followed the lodestar approach in determining that the proper fee to be awarded would be $14,200. On that basis the court concluded that any money received by Kinigstein from the plaintiff under their private retainer agreement that exceeded $14,200 was excessive under the disciplinary rule and should be returned to plaintiff. The conclusion does not follow from the premise. Even assuming a decision to award fees of $14,200 in plaintiff's favor against the defendants would have been sustainable under § 1988, it would not necessarily follow that any higher fee paid by plaintiff to his attorney under a private retainer agreement was an "excessive fee" under DR 2–106. The considerations that enter into whether a privately negotiated fee was "excessive" under the disciplinary rule are very different from those used to determine an appropriate fee award under a fee-shifting statute.[2] *See, e.g., In re Falick*, 247 A.D.2d 1, 677 N.Y.S.2d 370, 370 (2d Dep't 1998) (attorney submitted false time sheets); *In re Hantman*, 236 A.D.2d 75, 665 N.Y.S.2d 963, 964–65 (2d Dep't 1997) (attorney charged $17,000 for representation in child custody matter, during which he advised client to disregard court order, resulting in contempt proceedings against client); *In re Aaron*, 232 A.D.2d 119, 662 N.Y.S.2d 511, 514 (2d Dep't 1997) (attorney charged for service not rendered).

This confusion is also illustrated in the district court's determination of the hourly rate to which plaintiff was entitled under DR 2–106. In making its calculation of the lodestar, the court determined that appellant should be compensated at a substantially lower rate than was requested. Even if the court would have been justified in awarding the lower rate under a fee-shifting statute, it does not follow that appellant was not entitled to negotiate a higher hourly rate in a private agreement with a paying client. The court's determination of a reasonable fee to be imposed on the losing party under a fee shifting statute does not constitute a limit beyond which any fee privately agreed to between attorney and client is "excessive."

## CONCLUSION

The judgment of the district court requiring appellant to return $28,942.50 to his client is reversed.

---

**2.** We note that several decisions of the New York Supreme Court, Appellate Division, Second Department have indicated that a court lacks authority to order the reimbursement of a privately negotiated fee when the court is acting in the absence of a request by the client for such relief. *See Cass & Sons, Inc. v. Stag's Fuel Oil Co.*, 194 A.D.2d 707, 601 N.Y.S.2d 803, 803 (2d Dep't 1993); *Aadal v. Sunchris Realty, Inc.*, 89 A.D.2d 898, 454 N.Y.S.2d 11, 12 (2d Dep't 1982); *see also Hom v. Hom*, 210 A.D.2d 296, 622 N.Y.S.2d 282, 282–83 (2d Dep't 1994). Because it is not clear whether the New York Court of Appeals, or other Departments, would follow these precedents, we do not rely on that ground.