■ ALLAN S. SEXTER et al., Appellants-Respondents, v KIMMEL-MAN, SEXTER, WARMFLASH & LEITNER, et al., Respondents-Appellants. [844 NYS2d 183]—

Judgment, Supreme Court, New York County (Edward H. Lehner, J.), entered November 2, 2006, awarding defendants Leitner and Getz the principal sum of $644,144 against plaintiffs, and awarding defendant Levy the principal sum of $231,928 against plaintiffs, with prejudgment interest calculated on each sum from September 4, 2003, unanimously reversed, on the law, without costs, the awards vacated, and the matter remanded for a hearing and specific findings on limited issues. Appeal from order, same court and Justice, entered August 7, 2006, which, inter alia, granted said defendants' motion to confirm the Referee's "Remand Report" and denied plaintiffs' cross motion to disaffirm said report, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.

This is the latest installment in the ongoing litigation concerning a partnership accounting proceeding concerning a dissolved law firm. The history of this litigation must be reviewed to put the decision on this appeal in context.

In 1992, plaintiffs, then partners in the defendant law firm sought a decree of judicial dissolution of the firm, as well as an accounting. The individual defendants, also partners in the same firm, counterclaimed for an accounting, wrongful termination of the partnership agreement, and breach of contract.

The original firm partnership agreement provided that the partnership would continue year to year until terminated. While the agreement specifically allocated the net profits or losses of the partnership for the year 1989, there was no specific indication as to how the net profits or losses would be shared thereafter.

Paragraph 19 of the agreement provides, in pertinent part, that upon termination of the partnership "the proceeds of its then accounts receivable and accrued work in progress shall be distributed in accordance with the terms and percentages herein set forth . . . or as shall, from time to time, be agreed upon by the Partners hereto." The agreement was not modified after 1989. In 1990 and 1991, the partners negotiated division of the profits for each year. Although they discussed division of the profits in 1992, they were unable to come to an agreement. On September 17, 1992, plaintiffs notified the firm's lenders that the firm was in dissolution and two loans were called for immediate payment.

In 1998, because of various discovery disputes, the court referred the matter to a Special Referee who determined that the date of the dissolution of the firm was September 17, 1992. In 2003, a new Referee was appointed to hear and report on all outstanding issues pertaining to the litigation.

Three of the firm's cases—Voute, Davis and Kassover—generated much controversy. Voute and Davis were estate matters brought into the firm by plaintiff Warmflash. Retainer letters were sent to the executors by Warmflash on November 13, 1999 (Davis) and March 26, 1992 (Voute). The matters were to be billed hourly against a maximum of 2% of the value of the estate. A worksheet for September 1992 was entered into evidence as an illustration of the billing records kept. Time records post September 1992 were not produced by plaintiffs, although subpoenaed and the Referee precluded evidence of work done after that date.

The billing worksheet showed that as of September 30, 1992, receivables and work in progress for Davis were $18,728.68 and for Voute, $79,793.74. The Voute estate was valued at over $40 million, and plaintiffs collected postdissolution fees and disbursements of $330,193.85. They also collected postdissolution fees in the Davis matter, a $13 million estate, in the amount of $299,262.72.

The Kassover matter was brought into the firm in 1984 and the fee was based on a sliding scale contingency arrangement. The matter was resolved by defendants Leitner and Getz, postdissolution, for approximately $250,000, plus $65,000 in disbursements. Getz testified that in 1990, when he began working on the matter, he realized that the case was improperly brought and had to start a new case in 1991, which was the case that was ultimately settled. Defendants Leitner and Getz submitted a detailed account of the time and work performed on the Kassover case following the firm's dissolution.

Plaintiffs submitted testimony from the firm's former tax preparer, Michael Gorman, who prepared what was termed an "accounting" for the period January 1 through September 18, 1992. Gorman's report did not include any assets receivable on the date the firm stopped doing business, although they were admittedly assets of the partnership. He was not advised of the receipt of fees accrued predissolution in the Voute matter, which fees were deposited into the Sexter & Warmflash operating account as opposed to the dissolution or escrow account. Other payments, including a 1992 payment on the Davis estate, did not appear on the accounting. In fact, Warmflash instructed Gorman to use a December 31, 1991 dissolution date and treat 1992 receivables and work in process as allocable to the attorneys responsible for supervising and/or who introduced the client to the firm. Gorman concluded that the total assets of the firm were $250,141, liabilities $137,800 and partner capital $112,341.

Defendants Leitner and Getz focused on the valuation of the law firm, including its "good will." The expert's report documented the total receipts at the time of dissolution as $1,513,645. From that number, expenses were deducted and additions made, including the fees in the Voute and Davis estates, bringing the assets of the firm at the time of dissolution to $1,710,535. After credits and other offsets were calculated, his report showed the total amount due to Leitner and Getz was $314,369. He did not consider the Kassover fee as a firm asset in his accounting.

Defendant Levy's expert calculated that as of September 17, 1992, there were $1,643,532 in accounts receivable, $1,562,353 of work in progress due the partners, and total partners' capital of $3,318,226.

After 10 days of hearings, the Special Referee issued a 15-page report, finding, inter alia, that Leitner and Getz had adequately accounted for their postdissolution receipts but that plaintiffs failed to do so, particularly with respect to the Voute

and Davis estate matters. Since plaintiffs had not demonstrated that the value of those matters was impacted in any way by their postdissolution actions, the Special Referee valued those matters as of the date of dissolution. She further stated that Leitner and Getz demonstrated that they "totally revamped and reinstituted" the Kassover matter, independent of the work in progress on that case as included in the assets of the partnership in dissolution, and were thus entitled to retain those fees.

Finally, the Special Referee valued the dissolved firm at $2,036,465. She determined that each of the five partners was entitled to recover $407,293, and that since plaintiffs retained the remaining assets of the dissolved firm, they were responsible for payments to the remaining partners. She also determined that there was no basis for recovery of lost earnings, goodwill, or claims for breach of contract.

Defendants moved to confirm the Referee's report to the extent that it awarded distribution of the assets of the dissolved law firm, and requested prejudgment interest. Defendants also moved to disaffirm the findings to the extent that they refrained from awarding distribution of the goodwill of the partnership. Plaintiff cross-moved to confirm the report to the extent it found no basis to award damages for breach of contract, but to disaffirm it with respect to the total value of the assets and the manner in which that amount was calculated.

Although the IAS court noted during oral argument that the Referee had not indicated in her report how she arrived at her figures, it confirmed the report in all respects, subject to an adjustment not relevant to this appeal. It thereafter issued an order directing the entry of judgment against plaintiffs jointly and severally, but declined to award prejudgment interest to defendants.

On June 28, 2005, we vacated that judgment and remanded "for further proceedings as to the amount of fees subject to distribution on account of the Kassover litigation, and for clarification and recalculation of the firm's assets subject to distribution, including whether the parties' capital contributions were taken into account" (19 AD3d 298, 298 [2005]). We agreed that plaintiffs failed to establish that the Voute and Davis estates were billed on an hourly basis, but rejected the Referee's finding that the Kassover matter was not brought into the firm before its dissolution, finding that "valuable work" was performed prior to the dissolution, and part of the fee should have been credited to the firm. We also observed that "the lack of specificity in the Special Referee's findings relating to the firm's assets at dissolution make it impossible to discern the ev-

idence underlying the total amount found subject to distribution" (*id.* at 299). Finally, we noted there were no findings justifying the imposition of joint liability, and we would not, at that point, address the issue of denial of prejudgment interest.

On remand, the Referee found, on September 4, 2003, that plaintiffs had a statutory duty to their former partners, and in "light of the diversion of partnership funds by the plaintiff[s] to the detriment of the defendant partners of the firm, the imposition of joint and several liability is mandated." With respect to the Kassover matter, the Referee found that since it had been brought into the firm before dissolution, the firm was entitled to 5% of the fees from the eventual recovery ($17,500).

The Referee valued the firm assets by using defendants' valuation and adding the Kassover fees for a total of $2,354,238. She determined that Leitner and Getz were each due $644,144, and that Levy was due $294,280, less a draw of $62,352. Moreover, she determined prejudgment interest was justified because plaintiffs had full use of, and failed to account for, monies that belonged to the partnership for 11 years. She recommended that interest be awarded from the date of the firm's dissolution (September 17, 1992).

The IAS court granted defendants' motion to confirm the report and directed that liability be joint and several. However, it awarded prejudgment interest from September 4, 2003, the date "when it was first determined by a judicial officer that plaintiffs failed to establish that the legal services rendered in connection with the Davis and Voute estates were performed post the date of dissolution."

The imposition of joint and several liability is based upon the rationale that the wrongdoers are considered part of a joint enterprise and a mutual agency "such that the act of one is the act of all and liability for all that is done is visited upon each" (*Ravo v Rogatnick*, 70 NY2d 305, 310 [1987]).

In the case of a partnership, "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property" (Partnership Law § 43 [1]). A breach of such fiduciary duty would subject the partners to joint and several liability (Partnership Law § 26).

Here, plaintiffs removed funds from the firm involving the Voute and Davis matters and deposited them into their present partnership account, thus breaching their fiduciary duty to defendant partners, as these funds were connected with the

"liquidation of the partnership" as envisioned in Partnership Law § 43 (1). If defendants made similar deposits of funds involving the Kassover matter, they too are subject to joint and several liability to the extent those funds exceed those owed by plaintiffs. Thus, the court's confirmation of the Referee's determination on this issue was proper.

CPLR 5001 (a), concerning preverdict interest, provides, in pertinent part, that "in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion." We have held that such an award is "virtually mandated" in situations where fiduciaries failed to properly account for many years, during which time the fiduciary "enjoyed the benefit of [the injured partner's] money" (*Aurnou v Greenspan*, 161 AD2d 438, 440 [1990], *lv denied* 76 NY2d 713 [1990]; *see also Eighteen Holding Corp. v Drizin*, 268 AD2d 371 [2000]).

As the Referee noted, plaintiffs repeatedly failed to provide records concerning the Voute and Davis matters. They were even held in contempt for failing to comply with court ordered discovery, a determination which we affirmed on a prior appeal (277 AD2d 186 [2000]). Regardless of the ultimate amount owed to defendants, they should be compensated for the time plaintiffs had use of their funds. Although the IAS court properly determined to award prejudgment interest, we find plaintiffs' conduct egregious enough to warrant the imposition of such interest from the date of the dissolution of the partnership, and, approve the Referee's recommendation in this respect.

While courts will generally not disturb the findings of a referee if his or her determination is substantiated by the record (*see Nager v Panadis*, 238 AD2d 135 [1997]), contrary to our directive on remand, there are no calculations evidencing the Referee's conclusions, other than her wholesale adoption of defendants' numbers. Although plaintiffs are only challenging a portion of the award—specifically, a claimed overage in distributable assets of $768,995 and claimed omissions in the parties' capital account—it is impossible to determine whether the Referee's determinations are based upon substantial evidence (*see Weckstein v Breitbart*, 111 AD2d 6 [1985]) or whether she declined to consider the parties' capital account balances (*see Fredericks v Stein*, 60 AD2d 542 [1977]).

The same problem arises regarding plaintiffs' claim that the Referee's determination as to the firm's share of the Kassover litigation is insufficient. The Referee merely stated that an appropriate share was 5%, without explaining why the hours worked on the file prior to dissolution were so insignificant.

Accordingly, the award is vacated to the extent that the matter is remanded for the Referee to address the purported overage of $768,995, the purported omissions concerning the parties' capital account, and to make specific findings on the issue of the fees and disbursements due to the firm on the Kassover matter. With respect to the issues of the overage and capital account, plaintiffs are directed to offer specifics as to their challenges to the particular amounts in question and the Referee is directed to make detailed findings on each of the issues remanded for consideration. Concur—Sullivan, J.P., Buckley, Gonzalez, Sweeny and Kavanagh, JJ.