**Sanders Equities LLC v Maldonado**

2025 NY Slip Op 34592(U)

December 17, 2025

Supreme Court, Nassau County

Docket Number: Index No. 605681/2022

Judge: Sharon M.J. Gianelli

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU COMMERCIAL DIVISION – Part 7
Present: Hon. Sharon M.J. Gianelli

———————————————————————— X

SANDERS EQUITIES LLC, NEXT MILLENNIUM
REALTY, LLC, AERIAL WAY AND ROBBINS LLC,
123 FROST ASSOCIATES L.P.,
135 NORTH BROADWAY LLC and
69 BLOOMINGDALE LLC.,

Index No. 605681/2022

Mot. Seq. No. 006

DECISION AND ORDER
AFTER INQUEST

Plaintiffs,

-against-

KEVIN MALDONADO,
KEVIN MALDONADO AND ASSOCIATES, P.C.
d/b/a KEVIN MALDONADO & ASSOCIATES
d/b/a KEVIN MALDONADO & PARTNERS LLC,
MELISSA MALDONADO, KEVIN MALDONADO and
MELISSA MALDONADO, as TRUSTEES of
THE KEVIN AND MELISSA MALDONADO TRUST,
EAGLE LAKE HOLDINGS LLC,
BUSHMAN HILL REAL ESTATE LLC,
567 FOUR MILE POINT LLC,
WM WELCH ENTERPRISES LLC,
BLUE STONE AND MULCH LLC,
WMW HOLDINGS LLC, and
HART MANSION LLC,

Defendants.

———————————————————————— X

Upon consideration of the papers and evidence submitted at inquest, the Court makes the

following Findings of Fact and Conclusions of Law.

This is a damages inquest resulting from three written Decisions and Orders of this Court

following a series of defaults by Defendants Kevin Maldonado ("Maldonado") and Kevin

1

[* 1]

INDEX NO. 605681/2022

RECEIVED NYSCEF: 12/17/2025

Maldonado and Associates, P.C. d/b/a Kevin Maldonado & Associates d/b/a Kevin Maldonado & Partners LLC (the "Firm") (collectively, "Defendants").

In the first Decision and Order, this Court ruled on the Sanders Entities' motion to strike, to preclude, or to compel under CPLR 3124 (3). The Court concluded that Maldonado and the Firm "have shown themselves overall to be evasive, uncooperative, and dilatory" after refusing for two years to produce disclosure, ruling that they "have just about earned" the "drastic steps" of "[s]striking and/or preclusion."

But the Court granted them "one additional opportunity" to "fully comply with all outstanding discovery" within "thirty (30) days from the date of entry of this Decision and Order," with "leave" for Plaintiffs (hereinafter the "Sanders Entities") to "re-apply" for disclosure sanctions should Maldonado and the Firm "fail to comply with this Decision and Order" (*Sanders Equities LLC v Maldonado*, 2024 NY Slip Op 34593[U] [Sup Ct, Nassau County Oct. 7, 2024, Gianelli, J.]; NYSCEF Doc. No. 170). The Court's "one additional opportunity" became three, this Court extending its original deadline from November 8, 2024 to January 3, 2025, then from January 3, 2025 to January 10, 2025 (*see* NYSCEF Doc. No. 181, ¶¶ 8-22). Maldonado and the Firm never complied with this Court's directives, and the Sanders Entities moved for leave to renew.

In the second Decision and Order, this Court ruled on the Sanders Entities' motion, pursuant to CPLR 2221 (e), for leave to renew their prior motion, pursuant to CPLR 3124 (3), to strike Maldonado and the Firm's Answer. This Court ruled: "Defendants Maldonado and the Firm have not only been afforded numerous opportunities to comply

2

[* 2]

with the Court's Orders, including three (3) final warnings, Defendants Maldonado and the Firm have repeatedly and intentionally failed to comply, without reasonable explanation." The Court "Granted" the Sanders Entities' motion to strike Maldonado and the Firm's Answer for "willful and contumacious refusal to comply with required discovery" (*Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 30694[U] [Sup Ct, Nassau County Mar. 3, 2025, Gianelli, J.]; NYSCEF Doc. No. 246).

In the third Decision and Order, this Court ruled on the Sanders Entities' motion, pursuant to CPLR 3212, for partial summary judgment on liability. The Court held that "the Court's striking of Defendants' Answer for failure to comply with discovery directives is tantamount to a liability determination favorable to Plaintiffs. As such, no triable issues of fact remain on the issue of liability." "Consequently," the Court held, "in accordance with New York case law, Defendants are considered to have admitted liability." The Court "Granted" partial summary judgment against Maldonado and the Firm "on the First, Second, Third, Fourth, Fifth, Sixth, Tenth, and Eleventh Causes of Action in the Verified Complaint," and ordered that "an inquest to assess Plaintiffs' damages shall be held in-person on October 8, 2025 at 9:30 a.m. before Hon. Jeffrey S. Brown (Ret.) at the Nassau County Supreme Court" (*Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 32439[U] [Sup Ct, Nassau County, July 2, 2025, Gianelli, J.]; NYSCEF Doc. No. 273).

On October 8, 2025, on the day of the damages inquest, Maldonado and the Firm defaulted again, declining to appear in Court to defend against a damages award.

3

[* 3]

"In an inquest to ascertain damages upon a default. . ., if the defaulting party fails to appear in person or by representative, the party entitled to judgment may be permitted to submit properly executed affidavits as proof of damages" (*Commonwealth Land Tit. Ins. Co. v Islam*, 220 AD3d 739, 741 [2d Dept 2023] [quotations and ellipses omitted]; *see* 22 NYCRR § 202.46).

Pursuant to 22 NYCRR § 202.46, on October 8, 2025, the Sanders Entities applied to this Court, and on October 14, 2025, the Court, by email, granted their application, to conduct this inquest on papers (*see* NYSCEF Doc. Nos. 279 - 280), which the Court now addresses.

Before turning to the Court's Findings of Fact and Conclusions of Law, the Court addresses certain rules of law governing this inquest.

### All Liability Allegations Deemed Admitted

"A defendant whose answer is stricken as a result of a default admits all traversable allegations in the complaint, including the basic allegation of liability," after which the "sole issue to be determined at the inquest is the extent of the damages sustained by the plaintiff" (*Chalom v Elat Car & Limousine Serv., Inc.*, 239 AD3d 933, 934 [2d Dept 2025] [quotations and brackets omitted]).

"[D]efaulters are deemed to have admitted all factual allegations contained in the complaint and all reasonable inferences that flow from them" (*Freedom Mtge. Corp. v Hansen-Velazquez*, 242 AD3d 1058 [2d Dept 2025] [quotations omitted]).

4

Based upon this rule of law, evert paragraph of the Verified Amended Complaint is deemed admitted, with the exception of the following, all of which address damages: Paragraphs 14, 134-135, 141-142, 148-149, 165, 173-174, 182, 190, 198, 219, and 238 (*see* NYSCEF Doc. No. 91).

### *No Evidence Tending to Defeat Liability*

"At an inquest, the defendants should not be permitted to introduce evidence to defeat the plaintiff's cause of action" (*Suburban Graphics Supply Corp. v Nagle*, 5 AD3d 663, 665 [2d Dept 2004]; *Dellis v Dellis*, 81 AD3d 870, 871 [2d Dept 2011] ["The defendants' answer was ultimately stricken based upon their failure to comply with discovery orders," so "defendants were properly precluded at the subsequent inquest on damages from introducing any evidence tending to defeat the plaintiff's cause of action"]).

Under this principle, at an inquest, a defendant is prohibited from introducing documents or testimony to attempt to deny or disprove liability (*see e.g. Reilly v Grieco*, 242 AD3d 1033 [2d Dept 2025] ["Supreme Court erred in permitting the defendant to testify that the plaintiff's allegations of sexual abuse were untrue and that he had never sexually abused the plaintiff. . . . The defendant's testimony denying the basic allegation of liability prejudiced a substantial right of the plaintiff, as that issue had been decided in her favor . . . . Accordingly, the court should have granted . . . a new trial on the issue of damages"]).

### *No Consideration of Proximate Causation*

"The sole issue to be determined at the inquest is the extent of the damages sustained by the plaintiff, and the court may not consider the question of whether the defendant caused

5

the damages sustained by the plaintiff" (*Chalom v Elat Car & Limousine Serv., Inc.*, 239 AD3d at 934; *see e.g. Castaldini v Walsh*, 186 AD3d 1193, 1194 [2d Dept 2020] [an "inquest court should not consider the question of whether the defendant caused the damages sustained by the plaintiff," so "there is no merit to Walsh's contention that the Supreme Court should have granted his motion to dismiss the complaint at the close of the plaintiffs' evidence for failure to establish causation"]).

Under this principle, at an inquest, a defendant is prohibited from introducing documents or testimony to attempt to deny or disprove causation (*see e.g. LD Acquisition Co. 9, LLC v TSH Trade Group, LLC*, 211 AD3d 928, 930 [2d Dept 2022] ["The sole issue to be determined at an inquest is the extent of damages sustained by the plaintiff. Here, the inquest court erred in considering the question of whether the defendants caused the damages sustained by the plaintiff"] [citations and quotations omitted]).

### No Statute-of-Limitations Defense

Where a defendant defaulted on liability, it may no longer assert a statute-of-limitations defense (*see e.g. Christiana Tr. v Victor*, 224 AD3d 869, 872 [2d Dept 2024] ["Since the defendant never vacated his default, he is precluded from raising the affirmative defenses of lack of standing and statute of limitations"]; *Deutsche Bank Natl. Tr. Co. v O'Connor*, 223 AD3d 872, 877 [2d Dept 2024] ["Since the defendant failed to vacate her default, she . . . was precluded from asserting a statute of limitations defense"]; *Nestor I, LLC v Moriarty-Gentile*, 179 AD3d 936, 938 [2d Dept 2020] ["unless the defendants' default is vacated or excused, the defendants waived their statute of limitations defense"]).

6

[* 6]

With these rules of law for damages inquests in mind, the Court now makes the following Findings of Fact.

## FINDINGS OF FACT

The following fact are taken from the Verified Amended Complaint (*see* NYSCEF Doc. No. 91), all allegations of which, except for damages, are deemed admitted (*Chalom v Elat Car & Limousine Serv., Inc.*, 239 at 934), the Affirmation of Steven Blaustein in Support of Award of Damages at Inquest, dated November 21, 2025 (the "Blaustein Aff."), and the evidentiary submissions thereto, all of which are uncontroverted.

The Court credits all of the following facts and resolves all credibility determinations and inferences flowing from in favor of the Sanders Entities, and against Maldonado and the Firm.

### Background and the Litigated Matters

The Sanders Entities are a group of affiliated real estate ownership, management, and leasing entities who own commercial properties in the Counties of Nassau and Suffolk. For approximately twenty-three years, the Firm, a small law firm practice of which Maldonado is sole principal and attorney, provided legal services to the Sanders Entities in various matters pending in the State and Federal Courts on Long Island.

Beginning in 2016, Maldonado and his Firm worked on and billed the Sanders Entities on the following matters:

     a. *Next Millennium Realty LLC, et al. v The Travelers Companies, Inc., et*

7

*al.*,
Supreme Court, Nassau County, Index No. 600996/2016 (the "Insurance Litigation Matter");

b.  *The Rehabilitation Institute, Inc. v 123 Frost Associates L.P.*, Supreme Court, Nassau County, Index No. 612897/2017 (the "Rehabilitation Institute Matter");

c.  *101 Frost Street Associates, L.P. v United States Atomic Energy Commission, et al.*, United States District Court, Eastern District of New York, Case No. 17-cv-03585 (the "Cost Recovery Matter");

d.  *United States of America v IMC Eastern Corp., et al.*, United States District Court, Eastern District of New York, Case No. 18-cv-03818 (the "Western Plume Litigation");

e.  *123 Frost Associates L.P. v The Rehabilitation Institute, Inc.*, Supreme Court, Nassau County, Index No. 601013/2019 (the "123 Frost Matter");

f.  *Hicksville Water District v Jerry Spiegel Associates, Inc., et al.*, United States District Court, Eastern District of New York, Case No. 19-cv-06070 (the "Hicksville Water District Matter");

g.  *69 Bloomingdale, LLC v Coral Graphics, et al.*, United States District Court, Eastern District of New York, Case No. 20-cv-02613 (the "69 Bloomingdale Road Matter");

h.  *Jerry Spiegel Associates, Inc. v Public Service Mutual Insurance Company, et al.*, Supreme Court, Nassau County, Index No. 609148/2020 (the "Magna Carta Litigation");

i.  *135 North Broadway, LLC v. Ligita Solano, et al.*, Supreme Court, Nassau County, Index No. 604700/2019 (the "135 North Broadway Matter"); and

j.  The New York Department of Environmental Conservation Matters (the "DEC Matters");

k.  The Environmental Protection Agency Matters (the "EPA Matters");

l.  *Arthur Sanders et al v Barry M. Strauss Associates Ltd.*, Supreme Court, New York County, Index No. 651984/2020 (the "Sanders Matter"); and

m.  *Aerial Way and Robbins LLC v Robbins Lane Service Center, Inc.*, Supreme Court, Nassau County, Index No. 601294/2017 (the "Aerial Way Matter").

8

Maldonado and his Firm referred to these adversarial and litigated matters in the Firm's legal bills by various names, including the "Insurance Litigation Matter," the "Cost Recovery Matter," the "Hicksville Water District Matter," the "Western Plume Litigation," the "Magna Carta Matter," the "DEC Matters," the "EPA Matters," the "69 Bloomingdale Road Matter," the "Aerial Way Matter," the "Sanders Matter," the "135 North Broadway Matter," the "123 Frost Matter," and the "Rehabilitation Institute Matter" (together the "Matters").

The Sanders Entities and Defendants did not have separate engagement letters for each of the Matters. Rather, Maldonado and the Firm handled the Matters together under a single ongoing continuous representation of the Sanders Entities with no formal retainer agreement. Except for the Rehabilitation Institute Matter, the Matters were entangled in multiple actions surrounding a Superfund site, having multiple layers of complications due to the expertise necessary to understand the scientific and legal issues related to environmental laws as well as the numerous numbers of litigants. Due to the sophisticated nature of the Matters, the Sanders Entities, in good faith, relied on Maldonado's representations on the status of each of the Matters and the accuracy of the invoices presented by Maldonado representing the work product being produced by the Firm.

As the Sanders Entities would later discover, the statuses of the Matters provided by Maldonado were inaccurate and the invoices were a fabrication of the work product actually produced by the Firm.

9

**Maldonado and the Firm's Total Fees Billed and Paid**

From January 2018 to April 2021, the time period for which the Sanders Entities now seek damages in this lawsuit, Maldonado and the Firm billed and collected an exorbitant amount of legal fees from the Sanders Entities. The total amount of payments the Sanders Entities made to Maldonado and the Firm for which the Sanders Entities seek recovery in this lawsuit equals $2,037,776.85 (Blaustein Aff., Ex. 2). Put another way, the Sanders Entities have paid Defendants a sum of $2,037,776.85, based on the following total payments in each of the Matters:

  a. The Insurance Litigation Matter: $1,275,979.19;

  b. The Rehabilitation Institute and 123 Frost Matters: $88,796.58;

  c. The Cost Recovery Matter: $350,776.87;

  d. The Western Plume Litigation: $46,997.50;

  e. The "Hicksville Water District Matter: $124,291.90;

  f. The 69 Bloomingdale Road Matter: $3,402.75;

  g. The Magna Carta Litigation: $3,280.00;

  h. The 135 North Broadway Matter: $410.00;

  i. The DEC Matters: $17,556.00;

  j. The EPA Matters: $112,864.06;

  k. The Sanders Matter: $262.00; and

  l. The Aerial Way Matter: $13,160.00.

(Blaustein Aff., Exs. 3-14).

On July 3, 2025, the Court granted partial summary judgment against Maldonado and the Firm "on the First, Second, Third, Fourth, Fifth, Sixth, Tenth, and Eleventh Causes of

10

Action in the Verified Complaint," and ordered that "an inquest to assess Plaintiffs' damages shall be held in-person on October 8, 2025 at 9:30 a.m. before Hon. Jeffrey S. Brown (Ret.) at the Nassau County Supreme Court" (the "Summary Judgment Decision") (Blaustein Aff., Ex. 15).

The Sanders Entities proceed on damages on the following claims:

- The First Cause of Action for Attorney Deceit / Judiciary Law § 487;

- The Second Cause of Action for Fraud;

- The Third Cause of Action for Breach of Fiduciary Duty; and

- The Sixth Cause of Action for Legal Malpractice.

Based upon these Findings of Fact, the Court now makes the following Conclusions of Law.

## CONCLUSIONS OF LAW

### *The Burden of Proving "Reasonableness" of Fees was Upon Maldonado and the Firm*

Before turning to the individual causes, the Court will address the law governing fee disputes between attorneys and clients. Ordinarily, the burden is upon the plaintiff to prove the elements of his or her case by a preponderance of the evidence (*see e.g.* PJI 1:23).

11

In an attorneys' fee dispute such as this, however, the burden is reversed, remaining upon the lawyer to prove the "reasonableness" of attorneys' fees, *even if* the client already paid the fee:

- *Jeffrey L. Rosenberg & Assoc., LLC v Candid Litho Print., Ltd.*, 76 AD3d 510, 510 [2d Dept 2010] ["In cases involving disputes between attorneys and clients over legal fees, as a matter of public policy, the attorneys have the burden of establishing that their compensation was fair and reasonable. In light of these considerations, . . ., the plaintiff failed to establish its prima facie entitlement to judgment as a matter of law since it did not demonstrate the reasonableness of the fees it charged"] [citations omitted];

- *O'Connor v Blodnick, Abramowitz and Blodnick*, 295 AD2d 586, 587 [2d Dept 2002] ["The trial court granted the defendants judgment as a matter of law at the close of the plaintiff's case on the ground that the plaintiff failed to satisfy his burden of establishing . . . that the services billed for were not performed at all or were unnecessary. . . . As a matter of public policy, the [attorney defendants] had the burden of establishing that their compensation was fair and reasonable. The fact that the fees in question were already paid to the defendants did not alter the fact that the defendants bore the ultimate burden of proof as to the reasonableness of their fees. A new trial must be granted to afford [the attorneys] an opportunity to satisfy their burden of proof"] [citations and quotations omitted]; and

- *Jacobson v Sassower*, 66 NY2d 991, 993 [1985] [As "a matter of public policy, courts pay particular attention to fee arrangements between attorneys and their clients. An attorney has the burden of showing that a fee contract is fair, reasonable, and fully known and understood by the client"] [citation omitted]).

12

Based upon these authorities, it was not the Sanders Entities' burden at this inquest to prove "unreasonableness" of Maldonado and the Firm's fees — it was Maldonado and the Firm's "ultimate burden of proof as to the reasonableness of their fees," and the "fact that the fees in question were already paid" did "not alter the fact" that the burden of proof remained upon Maldonado and the Firm (*O'Connor v Blodnick, Abramowitz and Blodnick*, 295 AD2d at 587).

Maldonado and the Firm defaulted at the inquest, declining to attempt to demonstrate the "reasonableness" of their attorneys' fees. Therefore, the Court concludes that the fees Maldonado and the Firm charged the Sanders Entities were unreasonable, and credits all of the Sanders Entities' assertions in this regard.

### The First Cause of Action for Attorney Deceit / Judiciary Law §487

This Court has granted the Sanders Entities partial summary judgment on liability on the First Cause of Action for Attorney Deceit / Judiciary Law § 487 (*see Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 32439[U] [N.Y. Sup Ct, Nassau County 2025]; NYSCEF Doc. No. 273).

Judiciary Law § 487 provides: "An attorney or counselor who . . . [i]s guilty of any deceit . . . with intent to deceive . . . any party . . . or . . . wilfully receives any money or allowance for or on account of any money which he has not laid out . . . forfeits to the party injured treble damages, to be recovered in a civil action."

13

"Under Judiciary Law § 487 (1), an attorney who is guilty of any deceit . . . with intent to deceive . . . any party . . . may be liable to the injured party for treble damages in a civil action" (*Altman v Orseck*, 235 AD3d 818, 819 [2d Dept 2025] [quotations and brackets omitted]).

"Treble damages awarded under Judiciary Law § 487 are not designed to compensate a plaintiff for injury to property or pecuniary interests. They are designed to punish attorneys who violate the statute and to deter them from betraying their special obligation to protect the integrity of the courts and foster their truth-seeking function" (*Specialized Indus. Servs. Corp. v Carter*, 99 AD3d 692, 693 [2d Dept 2012] [citations and quotations omitted]).

Judiciary Law § 487 encompasses a claim by a client against a lawyer for "charging her unnecessary and excessive fees" (*Lauder v Goldhamer*, 122 AD3d 908, 910 [2d Dept 2014] [affirming denial of dismissal of Judiciary Law § 487 claim as "not duplicative of the cause of action to recover damages for legal malpractice"]). An attorney's deceptive conduct causing a litigant to incur false or unnecessary attorneys' fees falls within the ambit of the statute:

- *Garanin v Hiatt*, 219 AD3d 958, 959 [2d Dept 2023] [a litigant's claim that an attorney's conduct "caused him" to incur unnecessary "attorneys' fees" is actionable under Judiciary Law § 487];

- *Joseph v Fensterman*, 204 AD3d 766, 767 [2d Dept 2022] ["Here, the first cause of action adequately pleaded a claim to recover damages for violations of Judiciary Law § 487, as it alleged that the defendants Abrams, Fensterman . . . intentionally

14

interfered with the settlement of the New Franklin litigation, causing years of additional litigation, in order to generate legal fees in the amount of $1.7 million"];

- *Betz v Blatt*, 160 AD3d 696, 699 [2d Dept 2018] ["A party's legal expenses in defending the lawsuit may be treated as the proximate result of the misrepresentation" covered by Judiciary Law § 487]).

Applying these authorities, Here, the record evidences that Maldonado and his Firm engaged in a pattern and practice of grossly excessive billing or outright fraudulent billing (i.e., billing for legal services Defendants either never provided, or which were provided entirely by other law firms) that resulted in the Sanders Entities paying $2,037,776.85 in legal fees to Defendants (Blaustein Aff., Ex. 2).

For example, in the latter part of 2019 and in early 2020, Maldonado and the Firm devoted a great detail of time to *Next Millennium Realty LLC, et al. v The Travelers Companies, Inc., et al.*, Supreme Court, Nassau County, Index No. 600996/2016 (the "Insurance Litigation Matter"), including responding to a request by the Special Referee for a catalog of all of the policies at issue (Blaustein Aff., ¶ 20). Ultimately, Maldonado billed more than $86,000 simply to review and scan insurance policies when he previously represented that a paralegal would be doing most of the work (Blaustein Aff., Ex. 3)

In addition, from January 2018 through May 2019 in the Insurance Matter, Maldonado and the Firm's bills refer extensively to the deposition of an expert witness named "Hughes." (*id.*, at at 3, 27, 35, 41,43, 62, 68, 73-75, 87, 142, 148, 160-161). For that single

15

deposition, Maldonado and the Firm billed over **600 hours** of time (*id.*). During that same period, Maldonado and the Firm billed approximately **316 hours** of legal time for drafting an eight-page lawyer affirmation for a Daubert motion, an amount of time which is criminally disproportionate to the work product produced (*id.*).

In the *United States of America v IMC Eastern Corp., et al., United States District Court*, Eastern District of New York, Case No. 18-cv-03818 (the "Western Plume Matter"), Maldonado and the Firm billed over **300 hours** for approximately $131,000 in legal fees just to defend (not to take) the depositions of three witnesses (Blaustein Aff., Ex. 6). Finally, in *Hicksville Water District v Jerry Spiegel Associates, Inc., et al.*, United States District Court, Eastern District of New York, Case No. 19-cv-06070 (the "Hicksville Water District Matter"), Maldonado and the Firm billed over **60 hours** for approximately $25,000 in legal fees for filing simple motion papers in support of a co-defendant's dismissal motion (Blaustein Aff., Ex. 7). Because of this misconduct, in July 2021, we terminated Maldonado and the Firm (Blaustein Aff., ¶ 26).

All of the claims on which the Sanders Entities proceeded at this inquest, without exception, arose from Maldonado and the Firm's dishonesty, misrepresentation, and deceit by rendering false and inflated legal bills in connection with underlying, pending litigations, or from concealing the striking of an answer by another Justice of this Court in one of the underlying litigations (*see e.g. Matter of D'Angelo*, 158 AD3d 107, 116 [2d Dept 2017] [an attorney's "self-dealing" is a "type of dishonesty" and "deceitful conduct"]; *Matter of Myerson*, 250 AD2d 41, 42 [1st Dept 1998] ["false billing . . . is, in and of itself, egregious conduct warranting severe penalty"]; *Matter of Aaron*, 232 AD2d 119, 124-25

16

[* 16]

[2d Dept 1997] [ordering attorney "disbarred from the practice of law, effective immediately," after he "inflated his legal fees and expenses by charging for work not actually performed"]).

Therefore, under Judiciary Law § 487, the Court grants treble damages, as set forth below (*see e.g. Suzuki v Greenberg*, 220 AD3d 604, 604-05 [1st Dept 2023], *lv denied* 41 NY3d 908 [2024] ["the court properly awarded treble damages" because "affirmatively misrepresenting . . . information" is "sufficient to establish egregious conduct under Judiciary Law § 487"] [quotations omitted]).

### The Second Cause of Action for Fraud

This Court has granted the Sanders Entities partial summary judgment on liability on the Second Cause of Action for Fraud (*see Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 32439[U] [N.Y. Sup Ct, Nassau County 2025]; NYSCEF Doc. No. 273).

"The elements of a cause of action sounding in fraud are [1] a material misrepresentation of an existing fact, [2] made with knowledge of the falsity, [3] an intent to induce reliance thereon, [4] justifiable reliance upon the misrepresentation, and [5] damages" (*Abraham v Torati*, 219 AD3d 1275, 1279 [2d Dept 2023] [quotations omitted]; *Joseph v Fensterman*, 204 AD3d at 768 ["The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages. . . . Here, the second cause of action pleaded with the necessary particularity the elements of fraud against the law firm and Howard Fensterman"]).

17

Where an attorney induces a client to pay the attorney money based upon false, misstated, or inflated legal bills, it is a fraud:

- *Vermont Mut. Ins. Co. v McCabe & Mack, LLP*, 105 AD3d 837, 839-40 [2d Dept 2013] ["Here, the complaint alleged that the defendants committed fraud by misrepresenting that they made a motion for a default judgment when they never made, filed, or drafted such a motion, that the plaintiff relied on the misrepresentation, and that the defendants billed the plaintiff for drafting the motion. Those allegations were sufficient to state a cause of action to recover damages for fraud"] [quotations omitted];

- *Tsimerman v Janoff*, 40 AD3d 242, 242 [1st Dept 2007] [denying dismissal of client's fraud claim alleging that "defendant law firm . . . padded bills, overbilled, farmed out work to a lawyer who was not a member of the firm" and provided a "false statement of services rendered"]; and

- *In re Weinstein*, 4 AD3d 29, 36 [1st Dept 2004] ["respondent's double billing . . . was a violation of DR 1-102 (A) (4)" prohibiting "dishonesty, fraud, deceit, or misrepresentation"]).

Turning to damages, the "true measure of damage" for fraud "is indemnity for the actual pecuniary loss sustained as the direct result of the wrong, or what is known as the 'out-of-pocket' rule" (*Glob. Granite Sales Corp. v Sabovic*, 166 AD3d 587, 589 [2d Dept 2018] [quotations omitted]). "Under this rule, the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*id.* [quotations omitted]; *see also e.g. Maisano v Beckoff*, 2 AD3d 412, 413-14 [2d Dept 2003]

18

["Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud . . . . The plaintiff's own testimony established that his actual out-of-pocket loss as a result of the fraud was $427,000, or the difference between the amount which he invested and the amount which he received back"]).

Here, record evidence demonstrates that the representation of Plaintiff Next Millennium Realty, LLC ("Next Millennium") in the Insurance Litigation Matter (Blaustein Aff., Exs. 3, 16) constituted a fraud. Specifically, between June 2019 and April 2021, Maldonado and the Firm billed, and the Sanders Entities paid, $263,255.80 related to Defendants' alleged provision of legal services in connection with filing a motion for summary judgment on behalf of Next Millennium and opposing four pending motions for summary judgment (Blaustein Aff., Ex. 3, at 194-195, 200-201, 210-211, 215-216, 231-233, 253, 261, 266, 270, 274, 278, 282, 286).

In reality, the motions for summary judgment were not written by Maldonado or the Firm, but another law firm, Whiteman Osterman & Hanna LLP ("WOH") (Blaustein Aff., ¶¶ 30, 31, 36-37). The only work product that Maldonado and the Firm actually delivered to the Sanders Entities was a three-page client affidavit that was virtually entirely rewritten by the Sanders Entities' General Counsel, Steven Blaustein (Blaustein Aff., Ex. 19). The fraud was eventually discovered by the Sanders Entities in May 2021, when the Sanders Entities received two bills, one from Maldonado and the Firm for $73,737.50, and one from WHO for approximately $65,000, for the exact same work on the motions for summary judgment (Blaustein Aff., Exs. 17, 18, 20; ¶¶ 32-37, 40).

19

[* 19]

This amount constitutes "definite, measurable out-of-pocket damages resulting from the alleged fraud" (*Vice, Inc. v Stapp*, 209 AD3d 794, 797 [2d Dept 2022]). Therefore, the Court awards the Sanders Entities money damages on the Second Cause of Action for Fraud in the amount of $263,255.80.

### The Third Cause of Action for Breach of Fiduciary Duty

This Court has granted the Sanders Entities partial summary judgment on liability on the Third Cause of Action for Breach of Fiduciary Duty (*see Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 32439[U] [N.Y. Sup Ct, Nassau County 2025]; NYSCEF Doc. No. 273).

"The elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct" (*Sneider v Great S. Bay Surgical Assoc.*, 235 AD3d 685, 687 [2d Dept 2025] [quotations omitted]).

"The relationship of client and attorney is one of unique fiduciary reliance which imposes on the attorney the duty to deal fairly, honestly and with undivided loyalty including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interests over the lawyer's" (*St. Annes Dev. Co. v Batista*, 165 AD3d 997, 997-98 [2d Dept 2018] [quotations, brackets, and ellipses omitted]).

20

Any attorneys' fee dispute necessarily "begins with a reflection on the nature of the attorney-client relationship," because the "greatest trust between people is the trust of giving counsel" (*Matter of Cooperman*, 83 NY2d 465, 471-72 [1994] [quotations and brackets omitted]).

"This unique fiduciary reliance, stemming from people hiring attorneys to exercise professional judgment on a client's behalf—'giving counsel'—is imbued with ultimate trust and confidence," so the "attorney's obligations, therefore, transcend those prevailing in the commercial market place" (*id.* at 472 [quotations omitted]). "To the public and clients, few features could be more paramount than the fee--the costs of legal services . . . . Accordingly, attorney-client fee agreements are a matter of special concern to the courts and are enforceable and affected by lofty principles different from those applicable to commonplace commercial contracts" (*id.*).

Under these principles, an attorney's overbilling or false billing of a client is a breach of fiduciary duty:

- *Sobel v Ansanelli*, 98 AD3d 1020, 1021-23 [2d Dept 2012] ["The plaintiff's breach of fiduciary duty claims, set forth under the first and second causes of action, were premised upon allegations that the defendants had charged excessive legal fees totaling over $44,000 . . . . Contrary to the defendants' contention, the Supreme Court properly denied those branches of their motion which were pursuant to CPLR 3211 (a) (1) and (7) to dismiss the first and second causes of action alleging, in effect, breach of fiduciary duty premised on the theory that the defendants

21

charged excessive legal fees" because such allegations "are sufficient to state a cause of action sounding in breach of fiduciary duty"];

- *Reiver v Burkhart Wexler & Hirschberg, LLP*, 73 AD3d 1149, 1150 [2d Dept 2010] ["The plaintiffs commenced this action against their former attorneys, alleging . . . that the attorneys breached their fiduciary duty to them by charging them excessive legal fees. . . . Contrary to the defendants' contentions . . ., the allegations of the complaint are sufficient to state a viable cause of action sounding in breach of fiduciary duty"]; and

- *U.S. Ice Cream Corp. v Bizar*, 240 AD2d 654, 655-56 [2d Dept 1997] [client's allegations the "defendant law firm engaged in numerous instances of improper billing in the underlying litigation in which it represented the plaintiffs" demonstrated breach of the lawyer's "fiduciary" obligation "to exercise the highest degree of good faith, honesty, integrity, fairness, and fidelity" and to "not have personal interests antagonistic to those of his client"]).

Turning to damages, the Sanders Entities pled their breach of fiduciary duty claim as one for disgorgement of compensation under the faithless servant doctrine:

- NYSCEF Doc. No. 91, ¶ 7 ["the many remedies to which the Sanders Entities are entitled from Maldonado and the Firm under New York law . . . include . . . disgorgement of all attorneys' fees and other compensation Maldonado and the Firm received from the Sanders Entities during the period of their disloyalty"];

- *id.*, ¶¶ 146, 149 ["Maldonado and the Firm . . . breached their fiduciary duties by self-dealing, by placing their own financial interests above the duties of loyalty and candor they owed their own clients, the Sanders Entities . . . . Therefore, under

22

common law, the Sanders Entities are entitled to disgorgement of all compensation received by Maldonado and the Firm during the period of their disloyalty to the Sanders Entities in an amount to be determined at trial"]; and

- *id.* at 32, "WHEREFORE Clause ["On the Third Cause of Action against Maldonado and the Firm, disgorgement of all compensation received by Maldonado and the Firm during the period of their disloyalty to the Sanders Entities in an amount to be determined at trial"]).

"The faithless servant doctrine provides that one who owes a duty of fidelity to a principal and who is faithless in the performance of his or her services is generally disentitled to recover his or her compensation, whether commissions or salary" (*R & G Brenner Income Tax Consultants v Gilmartin*, 233 AD3d 819, 822 [2d Dept 2024] [quotations and brackets omitted]). "The faithless servant doctrine applies when an employee-agent breaches their duty of loyalty owed to the employer-principal" (*id.* [quotations omitted]).

"It makes no difference" under the faithless servant doctrine "that the services were beneficial to the principal, or that the principal suffered no provable damage as a result of the breach of fidelity by the agent" (*Panos v Mid Hudson Med. Group, P.C.*, 204 AD3d 1016, 1018 [2d Dept 2022] [quotations omitted]).

"An employee forfeits his right to compensation for services rendered by him if he proves disloyal" (*Visual Arts Found., Inc. v Egnasko*, 91 AD3d 578, 579 [1st Dept 2012] [quotations omitted]). "Where, as here, defendants engaged in repeated acts of disloyalty, complete and permanent forfeiture of compensation, deferred or otherwise, is warranted

23

under the faithless servant doctrine" (*William Floyd Union Free Sch. Dist. v Wright*, 61 AD3d 856, 859 [2d Dept 2009]).

The faithless servant doctrine applies to disloyal or self-dealing attorneys:

- *Barasch & McGarry, PC v Marcowitz*, 219 AD3d 1242, 1242-43 [1st Dept 2023], *lv dismissed* 41 NY3d 996 [2024] ["plaintiff was entitled to summary judgment as a matter of law" for breach of the "duty of loyalty, grounded in the faithless servant doctrine" because defendant "does not dispute that he referred a matter to another law firm without plaintiff's knowledge or consent and collected more than $140,000 in referral fees"];

- *Chung v Williams Schwitzer & Assoc., P.C.*, 200 AD3d 514, 515 [1st Dept 2021] ["Supreme Court correctly concluded that, as a matter of law, Chung breached his duty of loyalty to WSA by referring cases to another attorney while still employed by WSA"]; and

- *Dawes v J. Muller & Co.*, 176 AD3d 473, 474 [1st Dept 2019] ["plaintiff's motion for summary judgment on her faithless servant claim should have been granted as to liability . . . as the parties do not dispute that decedent breached his duty of loyalty to the plaintiff. . . . Thus, plaintiff is entitled to a disgorgement of the fees which were paid to decedent individually"].

"Where, as here, forfeiture is part of the recovery sought in the action, the issue of whether the attorney should be required to disgorge the compensation received during the period of alleged disloyalty is properly entertained on a full record after trial" (*Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 AD3d 1, 9, 13 [1st Dept 2008]).

24

Under the faithless servant doctrine, "forfeiture is limited to compensation paid *during the time period of disloyalty*" (*Owen v Hurlbut*, 240 AD3d 1199, 1203 [4th Dept 2025]). The forfeiture arises upon misconduct and disloyalty which substantially affect the contract of employment," meaning the first date of onset of a "persistent pattern of disloyalty" (*G.K. Alan Assoc., Inc. v Lazzari*, 44 AD3d 95, 104 [2d Dept 2007], *affd* 10 NY3d 941 [2008]).

Here, a "persistent pattern of disloyalty" began no later than January 7, 2018, based on the following time entry in the Insurance Litigation Matter: "Review docs and prep for depositions of insurance witnesses" (Blaustein Aff., Ex. 3, at 3). At that time, the Sanders Entities were only aware of a single upcoming deposition of an insurance witness, defendant United States Fire Insurance Company ("U.S. Fire") (Blaustein Aff., ¶ 47). Between January 7, 2018 through January 24, 2018, Defendants billed a total of **131.25 hours** of preparation time for the January 25, 2018 deposition of U.S. Fire (Blaustein Aff., Ex. 3, at 3-4).

During this period, the Sanders Entities received no work product or any deposition transcript of U.S. Fire (Blaustein Aff., ¶ 49). The Sanders Entities later discovered that Maldonado and the Firm abruptly ended the deposition after a dispute over a discovery ruling by Special Referee (Blaustein Aff., Ex. 20). Adding insult to injury, despite the deposition not going the full seven (7) hours, Maldonado and the Firm billed the Sanders Entities eleven (11) hours in connection with the deposition (Blaustein Aff., Ex. 3, at 4 [January 25, 2018 time entry]).

25

[* 25]

Maldonado and the Firm's disloyalty continued throughout their representation of the Sanders Entities in the Matters. For example, between June 2019 and April 2021, Maldonado and the Firm billed, and the Sanders Entities paid, a total of $263,255.80, for work the summary judgment motions that was performed by a different law firm, WOH (Blaustein Aff., Exs. 3, 16-20). Additionally, Maldonado and the Firm billed excessive hours in the Western Plume Matter (300 hours to defend three depositions) and Hicksville Water District Matter (60 hours for a motion to dismiss) (Blaustein Aff., Exs. 6 and 7). In short, Defendants disloyalty continued through the conclusion of Maldonado and the Firm's representation of the Sanders Entities, on April 5, 2021, when the Sanders Entities made the final payment of Maldonado and the Firm's final legal bill (Blaustein Aff., Ex. 2).

Therefore, on the Third Cause of Action for Breach of Fiduciary Duty, the Court awards the Sanders Entities disgorgement of all compensation paid to Maldonado and the Firm from January 7, 2018, the first date of disloyalty, through April 5, 2021, the date of last payment to Maldonado and the Firm, in the amount of $2,037,776.85. As a consequence of their default, Maldonado and the Firm may "not dispute" they "breached" their "duty of loyalty," and, therefore, the Sanders Entities are "entitled to a disgorgement of the fees which were paid" under the "faithless servant claim" (*Dawes v J. Muller & Co.*, 176 AD3d at 474).

26

### *The Sixth Cause of Action for Legal Malpractice*

This Court has granted the Sanders Entities partial summary judgment on liability on the Sixth Cause of Action for Legal Malpractice (*see Sanders Equities LLC v Maldonado*, 2025 NY Slip Op 32439[U] [N.Y. Sup Ct, Nassau County 2025]; NYSCEF Doc. No. 273).

The Sanders Entities' legal malpractice claim involves entirely different conduct, and different damages, than the fraud and breach of fiduciary duty claims. The Sixth Cause of Action is not for fraudulent billing, but for professional malpractice for refusing to comply with disclosure, causing this Court (Bucaria, J.), to strike the Sanders Entities' answer in a litigation Maldonado and the Firm defended, captioned *The Rehabilitation Institute, Inc. v 123 Frost Associates L.P.*, Supreme Court, Nassau County, Index No. 612897/2017, concealing it from the Sanders Entities afterwards, forcing the Sanders Entities to settle the case, causing them damages as a result of the settlement of $350,000.

"In an action to recover damages for legal malpractice, a plaintiff must demonstrate [1] that the attorney failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession and [2] that the attorney's breach of this duty proximately caused plaintiff to sustain actual and ascertainable damages" (*Berkovits v Berkovits*, 190 AD3d 911, 918 [2d Dept 2021] [quotations omitted]).

An attorney who causes his or her client's default or loss on liability for noncompliance with disclosure demands or order departs from the standard of care, committing malpractice:

27

- *Carasco v Schlesinger*, 222 AD3d 476, 477 [1st Dept 2023] ["Between February 2017 and July 2018, Supreme Court, New York County issued orders dismissing the underlying action based . . . on plaintiff's failure to provide discovery. Plaintiff then commenced this legal malpractice action against J & S, Morelli Law Firm, and Schlesinger. . . . The court correctly determined that Schlesinger failed to establish prima facie" his entitlement to dismissal of the claim for legal malpractice"];

- *RTW Retailwinds, Inc. v Colucci & Umans*, 213 AD3d 509, 511-12 [1st Dept 2023] ["contrary to the motion court's conclusions, and viewing the evidence in the light most favorable to plaintiffs, the documentary evidence submitted by defendants did not utterly refute plaintiffs' allegations that defendants failed to produce discovery" on an "affirmative defense and that this led to the exclusion of certain evidence at trial. . . . Accordingly, defendants have not conclusively established a defense" to a claim of legal malpractice, requiring reversal of grant of dismissal]; and

- *4777 Food Servs. Corp. v Anthony P. Gallo, P.C.*, 150 AD3d 1054, 1054-55 [2d Dept 2017] [reversing pre-answer dismissal of an "action to recover damages for legal malpractice," where "the complaint alleges that the defendants, Anthony P. Gallo, P.C., and Anthony P. Gallo . . ., who represented the plaintiff" in an underlying lawsuit "negligently failed to respond to certain discovery demands . . ., which resulted in the Supreme Court . . . precluding the introduction of evidence"]).

"A settlement and release in an underlying action" entered into to "obviate the full damage that would otherwise have flowed from his attorney's negligence" does "not preclude a subsequent action for legal malpractice where the settlement was compelled because of

28

the mistakes of former counsel" (*Lattimore v Bergman*, 224 AD2d 497, 497 [2d Dept 1996]; *Maroulis v Friedman*, 153 AD3d 1250, 1251 [2d Dept 2017] [a lawyer remains liable for legal malpractice "despite settlement of the underlying action, if it is alleged that settlement of the action was effectively compelled by the mistakes of counsel"] [quotations omitted]).

Where a client is forced to pay money out of pocket to resolve a litigation because of a lawyer's mistakes, "the settlement was effectively compelled by defendants' malpractice" and is a recoverable form of damage (*Stevens v Wheeler*, 216 AD3d 537, 538 [1st Dept 2023]). In other words, "a legal malpractice plaintiff's damages may include litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorney's wrongful conduct" (*I.M.P. Plumbing & Heating Corp. v Munzer & Saunders, LLP*, 199 AD3d 569, 570 [1st Dept 2021] [quotations omitted]), including a settlement

Here, the basis of the Sanders Entities Sixth Cause for Legal Malpractice involves Maldonado and the Firm's representation of the Sanders Entities in the following two matters (i) *The Rehabilitation Institute, Inc. v 123 Frost Associates L.P.*, Supreme Court, Nassau County, Index No. 612897/2017 (the "Rehabilitation Institute Matter"); and (ii) *123 Frost Associates L.P. v The Rehabilitation Institute, Inc.*, Supreme Court, Nassau County, Index No. 601013/2019 (the "123 Frost Matter") (Blaustein Aff., Ex. 22-23). Specifically, the Rehabilitation Institute Matter was a lawsuit brought by a commercial tenant of 123 Frost Associates L.P. ("123 Frost") alleging breach of a lease agreement, including claims against 123 Frost for declaratory judgment, breach of contract, breach of the covenant of good faith and fair dealing, and reformation (Blaustein Aff., ¶ 58). The

29

123 Frost Matter is a closely related matter to the Rehabilitation Institute Matter, in which 123 Frost brought claims for breach of contract, declaratory judgment, tortious interference with contract, and single enterprise liability (*id.*, ¶ 59).

In the Rehabilitation Institute Matter, Maldonado and the Firm repeatedly and consistently violated routine requests for production of pre-trial disclosure (*e.g.*, responses to discovery demands and interrogatories, and produce a corporate representative from 123 Frost for a noticed deposition) (Blaustein Aff., Ex. 22) However, Maldonado and the Firm failed to ever update 123 Frost and/or the Sanders Entities about any of these pre-trail discovery failures (Blaustein Aff., ¶ 60). Because of these repeated failure on or about December 13, 2018, the Hon. Stephen A. Bucaria issued a Short Form Order striking the Answer of 123 Frost to the extent that 123 Frost was precluded from offering certain evidence at trial supporting its defense (Blaustein Aff., Ex. 24). Despite the Court striking the Answer in December 2018, Maldonado and the Firm actively concealed that fact from 123 Frost and the Sanders Entities throughout the litigation of both matters (Blaustein Aff., ¶ 62).

On May 4, 2020, 123 Frost entered into a settlement agreement (the "Settlement Agreement"), whereby 123 Frost agreed to settle the Rehabilitation Institute and 123 Frost Matters by paying $350,000.00 (Blaustein Aff., Ex. 25). When the Settlement Agreement was executed, 123 Frost and/or the Sanders Entities were still unaware that the Answer was stricken in the Rehabilitation Institute Matter (Blaustein Aff., ¶ 64).

30

[* 30]

Therefore, the Court awards the Sanders Entities money damages on the Sixth Cause of Action for Legal Malpractice in the amount of $350,000.

### *Prejudgment Interest*

On the First Cause of Action for Attorney Deceit / Judiciary Law § 487, the record shows that Maldonado and the Firm acquired funds from the Sanders Entities through "deceit" and "with intent to deceive," depriving them of the use of their money (*Altman v Orseck*, 235 AD3d at 819).

This claim involved "an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property" – taking of a law firm client's fund through dishonesty – for which prejudgment interest is recoverable as of right (CPLR § 5001 [a]).

Therefore, the Court awards prejudgment interest on the First Cause of Action (*see e.g. Stein v Einhorn*, 74 AD3d 1185, 1185 [2d Dept 2010] ["Supreme Court properly calculated prejudgment interest on the treble damages awarded"]; *Mohassel v Fenwick*, 5 NY3d 44, 47 [2005] ["In this rent overcharge proceeding, the issue is whether a rent stabilized tenant was properly granted prejudgment interest on a treble damages award. We conclude that he was."]).

On the Second Cause of Action for Fraud, a plaintiff who prevails on a claim for fraud is entitled to prejudgment interest (*see e.g. Huang v Sy*, 62 AD3d 660, 661 [2d Dept 2009] ["Supreme Court properly awarded pre-verdict interest as a matter of right pursuant to CPLR § 5001 (a) upon the principal sum awarded in connection with the plaintiffs' causes

31

of action to recover damages for fraud"]; *see also e.g. Whittemore v Yeo*, 117 AD3d 544, 545-46 [1st Dept 2014] ["The court properly awarded prejudgment interest, as defendant had the advantage of using the money that plaintiff was fraudulently induced to contribute and plaintiff was deprived of his use thereof"] [citations omitted]). Therefore, the Court awards prejudgment interest on the Second Cause of Action.

On the Third Cause of Action for Breach of Fiduciary Duty, a plaintiff who prevails on a claim for breach of fiduciary duty is entitled to prejudgment interest (*Huang v Sy*, 62 AD3d at 661 ["Supreme Court properly awarded pre-verdict interest as a matter of right pursuant to CPLR § 5001 (a) upon the principal sum awarded in connection with the plaintiffs' causes of action to recover damages for . . . breach of fiduciary duty"]). "[S]uch an award is virtually mandated in situations where fiduciaries failed to properly account for many years, during which time the fiduciary enjoyed the benefit of the injured [principal]'s money" (*Sexter v Kimmelman, Sexter, Warmflash & Leitner*, 43 AD3d 790, 795 [1st Dept 2007] [quotations omitted]). Therefore, the Court awards prejudgment interest on the Third Cause of Action.

On the Sixth Cause of Action for Legal Malpractice, a plaintiff who prevails on a claim for legal malpractice is entitled to prejudgment interest (*Lovino, Inc. v Lavallee Law Offices*, 96 AD3d 910, 913 [2d Dept 2012] ["The defendants contend that the assessment of prejudgment interest on the entire principal amount is an impermissible double recovery . . . . This contention is without merit"]; *Barnett v Schwartz*, 47 AD3d 197, 208 [2d Dept 2007] ["CPLR § 5001 operates to permit an award of prejudgment interest from the date of accrual of the malpractice action in actions seeking damages for attorney malpractice"]

32

[quotations omitted]). Therefore, the Court awards prejudgment interest on the Sixth Cause of Action.

The applicable rate of interest on all of the causes of action is 9% per annum (*see* CPLR § 5004 [a]; *see e.g. Scotti v Barrett*, 166 AD3d 698, 699 [2d Dept 2018] ["interest is to be awarded at the statutory rate of 9% per annum"]).

The sole remaining question is from when interest should run. The default rule is that prejudgment interest "shall be computed from the earliest ascertainable date the cause of action existed . . . ." (CPLR § 5001 [b]). The exception is that where "damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date" (*id.*).

Here, because of Maldonado and the Firm's dishonesty and deceit of their longtime clients, and their disregard for this Court's orders over three years of litigation, the Court exercises its discretion and awards prejudgment interest from the "earliest ascertainable date the cause of action existed" (CPLR § 5001 [b]), which is January 7, 2018, through the date of entry of judgment (*see e.g. Ecoline, Inc. v W.H. Peepels Co., Inc.*, 153 AD3d 786, 787 [2d Dept 2017] [the "award of interest on the judgment should be calculated as of the earliest ascertainable date the cause of action existed"]).

Accordingly,

It is

ORDERED, that Plaintiffs are awarded damages as follows: (i) on the First Cause of Action for Attorney Deceit / Judiciary Law § 487, awarding treble damages on the amount awarded on the Third Cause of Action, $2,037,776.85, for a total treble award of $6,113,330.55; (ii) on the Second Cause of Action for Fraud, awarding money damages of $263,255.80; (iii) on the Third Cause of Action for Breach of Fiduciary Duty, awarding disgorgement of compensation under the faithless servant doctrine of $2,037,776.85; (iv) on the Sixth Cause of Action, awarding money damages of $350,000.00; and

It is

ORDERED, that Plaintiffs are awarded prejudgment interest on the total principal award at the rate of 9% per annum from January 7, 2018, through the date of entry of judgment; and

It is

ORDERED, that Plaintiffs shall submit Judgment on Notice to the Nassau County Clerk in accordance with this Decision and Order within thirty (30) days of the date of entry; and

It is

ORDERED that Plaintiffs shall serve a copy of this Decision and Order with Notice of Entry upon Defendants within seven (7) days of the date of entry of this Decision and Order.

34

[* 34]

This constitutes the Decision and Order of the Court after Inquest.


Dated: Mineola, New York
       December 17, 2025

                              Sharon M.J. Gianelli
                        Justice of the Supreme Court

35